# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA FEINMAN                          *
The Pearl Project                        *
Center for Public Integrity              *
910 17th Street, N.W.                     *
Suite 700                                *
Washington, D.C. 20006                   *
                                         *
      Plaintiff                  *
                                         *
      v.                         *
                                         *
CENTRAL INTELLIGENCE AGENCY              *
Washington, D.C. 20505                   *
                                         *
      and                        *
                                         *
FEDERAL BUREAU OF                        *
INVESTIGATION                            *
Washington, D.C. 20535                   *
                                         *
      and                        *   Civil Action No. 08- _____
                                         *
DEPARTMENT OF DEFENSE                    *
Washington, D.C. 20301                   *
                                         *
      and                        *
                                         *
DEPARTMENT OF STATE                      *
Washington, D.C. 20520                   *
                                         *
      and                        *
                                         *
DEPARTMENT OF JUSTICE                    *
Washington, D.C. 20530                   *
                                         *
      and                        *
                                         *
DEPARTMENT OF                            *
THE TREASURY                             *
Washington, D.C. 20220                   *
                                         *
      and                        *

DEFENSE INTELLIGENCE AGENCY          *
Washington, D.C. 20340               *
                                     *
        and                          *
                                     *
UNITED STATES CENTRAL COMMAND*
MacDill Air Force Base, FL 33621-5105 *
                                     *
        Defendants.                  *
                                     *
*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records pertaining to the 2002 kidnapping and murder of Danny Pearl. The records were improperly withheld from plaintiff Barbara Feinman, who was acting on behalf of The Pearl Project, by defendants Central Intelligence Agency, Federal Bureau of Investigation, Department of Defense, Department of State, Department of Justice, Department of the Treasury, Defense Intelligence Agency, and United States Central Command.

## JURISDICTION

1.   This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.   Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.   Plaintiff Barbara Feinman ("Feinman") is an Associate Dean for Georgetown University's School of Continuing Studies and co-director of The Pearl Project. She is a representative of the news media as that term is defined by the FOIA statute.

4.   Defendant Central Intelligence Agency ("CIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

5.   Defendant Federal Bureau of Investigation ("FBI") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

6.   Defendant Department of Defense ("DoD") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

7.   Defendant Department of State ("DOS") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

8.   Defendant Department of Justice ("DOJ") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

9.   Defendant Department of the Treasury ("Treasury") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

10.  Defense Intelligence Agency ("DIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

11.  United States Central Command ("CENTCOM") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Feinman which are the subject of this action.

## FACTUAL BACKGROUND

## Investigating Danny Pearl's Murder

12. The Pearl Project, a project of the Center for Public Integrity, was originally created in August 2007 as a unique three-credit investigative journalism seminar in the new Master of Professional Studies program housed in Georgetown University's School of Continuing Studies. The co-professors were Barbara Feinman Todd and Asra Nomani ("Nomani"), a former *Wall Street Journal* reporter. Students enrolled in the course during the fall semester 2007 and the spring semester 2008 to investigate what really happened when *Wall Street Journal* reporter Danny Pearl, an American citizen, was kidnapped and murdered while reporting from Karachi, Pakistan in 2002. The project consisted of graduate students from the Masters Program, undergraduate students from Georgetown College, and undergraduate and graduate students from the School of Foreign Service. Students who enrolled in the seminar sought to investigate who killed Danny and why they killed him, particularly through the use of FOIA requests. They also examined the wider relationship between the Muslim world and the press. The project has the support of Danny's family and has been funded by grants from the Ethics and Excellence in Journalism Foundation, a philanthropy based in Oklahoma City, Oklahoma.

13. As part of the course, students filed FOIA requests for documents pertaining to Danny's murder, but federal agencies consistently refused to release the documents requested.

14. In August 2008, following the course's conclusion at Georgetown University, The Pearl Project was moved to The Center for Public Integrity, a Washington, D.C., nonprofit organization dedicated to producing original, responsible investigative journalism on issues of public concern (*http://www.publicintegrity.org*). The Center is non-partisan and non-advocacy, and committed to transparent and comprehensive reporting both in the United States and around the world. The Center's specific mission is to produce original investigative journalism about significant public issues to make

4

institutional power more transparent and accountable. Current and former students from Georgetown University have dedicated their personal time to the completion of the project.

### Danny Pearl And His Murder

15. Danny Pearl was born in Princeton, New Jersey, on Oct. 10, 1963, and grew up in Encino, California, where he attended Portola Middle School and Birmingham High School. His father, Judea Pearl, was a professor at UCLA. Danny attended Stanford University, graduating in 1985 with a B.A. in communications with Phi Beta Kappa honors. He was a member of the Alpha Delta Phi Fraternity, and he co-founded a student newspaper, the *Stanford Commentator*. After graduating, he was a summer Pulliam Fellow intern at the *Indianapolis Star*. Following a trip to the then-Soviet Union, China, and Europe, he became a reporter at the *North Adams Transcript* and the *Berkshire Eagle* in western Massachusetts, and then joined the *San Francisco Business Times*.

16. Danny began at the *Wall Street Journal*'s Atlanta bureau in 1990, moving to the Washington, D.C., bureau in 1993 to cover telecommunications. He transferred to the *Journal*'s London bureau in 1996.

17. On January 23, 2002, Danny left the home of Nomani, a friend, to interview Sheikh Mubarak Ali Gilani at the Village Restaurant in Karachi. Unbeknownst to him, the interview was a trap, and he was kidnapped. On January 26, 2002, Danny's captors sent a ransom note to media outlets via the email address, kidnapperguy@hotmail.com. The captors said they belonged to "The National Movement for the Restoration of Pakistani Sovereignty." The group claimed Danny was a CIA agent and demanded the

release of Pakistani detainees from Guantanamo Bay and the delivery of a U.S. shipment of F-16 fighter jets to the Pakistani government, among other demands.

18. The message read: "We give you one more day if America will not meet our demands we will kill Daniel. Then this cycle will continue and no American journalist could enter Pakistan."

19. The alleged kidnappers attached photos of Danny with a gun pointed at his head and with a recent newspaper in his hands.

20. During February 4-5, 2002, Pakistani and U.S. investigators arrested three suspects involved in the kidnapping. The suspects led Pakistani police to Ahmed Saeed Omar Sheikh, the mastermind of the kidnapping plot. On February 5, 2002, Sheikh was in Pakistani government custody.

21. On February 21, 2002, a videotape titled *The Slaughter of the Spy-Journalist, the Jew Daniel Pearl*, was delivered to the FBI. The video documented Danny's murder. In the video, Danny was videotaped saying, "My name is Daniel Pearl. I am a Jewish American from Encino, California USA.I come from, uh, on my father's side the family is Zionist. My father's Jewish, my mother's Jewish, I'm Jewish. My family follows Judaism. We've made numerous family visits to Israel. Back in the town of Bnei Brak there is a street named after my great grandfather Chaim Pearl who is one of the founders of the town."

22.  FBI officials shared the video with Pakistani government officials.

23. In the second part of the video, Danny stated the captors' demands. The video superimposed political images around Danny including images of President George W. Bush shaking hands with former Israeli Prime Minister Ariel Sharon and those of a

Palestinian boy, Muhammad al-Dura, whom Palestinian activists said had been killed by the Israeli Defence Forces.

24. In the first part of the video, Danny is naked from the waist up and then he is shown with his throat slit. A man then decapitates him.

25. The video ends with images, including pictures of detainees at the Guantanamo Bay detention camp, and a scrolling list of the captors' demands. The English transcript of the text stated:

> NATIONAL MOVEMENT FOR THE RESTORATION OF PAKISTAN SOVEREIGNTY (NMRPS). We still demand the following:
>
> - The immediate release of U.S. held prisoners in Guantinamo Bay, Cuba. [sic]
>
> - The return of Pakistani prisoners to Pakistan.
>
> - The immediate end of U.S. presence in Pakistan.
>
> - The delivery of F-16 planes that Pakistan had paid for and never recieved. [sic] We asure [sic] Americans that they shall never be safe on the Muslim Land of Pakistan.
>
> - And if our demands are not met this scene shall be repeated again and again...

26. On March 21, 2002, in Pakistan, Ahmed Omar Saeed Sheikh and the three other men arrested in the case were charged with murder for their part in Danny's kidnapping and murder.

27.  In April 2002, the murder video was posted on the Internet, and that month Dan Rather reported on CBS that the video had been used to recruit jihadis in Pakistan and Saudi Arabia.

28.  On May 16, 2002, Pakistani police found Danny's body cut into ten pieces and buried in a shallow grave on a plot of land outside Karachi. His body was returned to the United States, and his family buried him at Mount Sinai Memorial Park Cemetery in Los Angeles, California.

29.  Sheikh and his three co-defendants were convicted on July 15, 2002, and Sheikh was sentenced to death. His three co-defendants were sentenced to life in prison. All four men have appealed their sentences.

30. On March 10, 2007, Khalid Sheikh Mohammed, the alleged mastermind of the September 11, 2001, attacks on the World Trade Center, claimed responsibility for Danny's murder before the Combatant Status Review Tribunal. He said, "I decapitated with my blessed right hand the head of the American Jew Daniel Pearl, in the city of Karachi, Pakistan." On March 19, 2007, Sheikh's lawyers cited Khalid Sheikh Mohammed's confession in defense of their client.

31. Much of what actually transpired while Danny was held captive, governmental efforts to rescue him, the identities of all of the terrorists who participated in his kidnapping and murder and whether anyone else will ever be prosecuted remains a mystery. Until more information is known, complete justice for Danny has not been achieved.

## COUNT ONE
### (CIA – DANIEL PEARL FILE)

32.  By letter dated June 29, 2007, Feinman submitted a FOIA request to the CIA for copies of all documents "related to the kidnapping and murder of Daniel Pearl, South Asia bureau chief of the *Wall Street Journal*." Feinman indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate

Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

33.  By letter dated August 1, 2007, the CIA acknowledged receipt of the request and assigned it Request No. F-2007-01604. As an initial matter, the CIA released three documents pertaining to Danny's kidnapping and murder that had previously been released. The CIA noted that, absent objection, it would limit its search for responsive materials to CIA-originated records. The CIA also stated that it had determined that Feinman's request fell into the "news media" fee category. The letter did not indicate any determination with respect to Feinman's request for a fee waiver.

34.  By letter dated September 28, 2007, the CIA informed Feinman that it had located two documents that could be released with redactions imposed by way of FOIA Exemptions (b)(1) and (b)(3). The CIA also stated that additional material had been identified but was being withheld in its entirety by way of FOIA Exemptions (b)(1) and (b)(3).

35.  By letter dated September 2, 2008, Feinman submitted a new request to CIA reviving Request No. F-2007-01604. The letter stated that Feinman was seeking both records pertaining to the "kidnapping and murder of Daniel Pearl" and was seeking unredacted copies of the two documents previously released by the CIA and identified as MORI DocID: 1486568 and MORI DocID: 1486569. Feinman again indicated her request for a waiver of fees.

36.  By letter dated September 22, 2008, the CIA acknowledged receipt of the new request and assigned it Request No. F-2008-01606. With respect to the first component of Feinman's request, the CIA stated that it would conduct an updated search from August 1, 2007 to September 22, 2008. The CIA noted that, absent objection, it would limit its search to CIA-originated records. With respect to the second component of

Feinman's request, the CIA stated that the documents were not eligible for re-review until September 28, 2009. The letter noted that the CIA had determined that Feinman's request fell within the "educational" fee category. No determination was indicated with respect to Feinman's request for a fee waiver.

37.  By letter dated October 14, 2008, Feinman appealed the CIA's response on four primary grounds: (1) to the extent that the August 1, 2007 "start date" referred only to responsive records created since August 1, 2007, that restriction was unreasonably narrow and should be extended to responsive records created since January 23, 2002; (2) that the CIA should not restrict its search to CIA-originated records, but rather to records created by other federal agencies or by U.S. Government-sponsored contractors, as well as to responsive records currently in the possession of a U.S. Government contractor for the purposes of records management; (3) to the extent that the lack of a determination with respect to Feinman's request for a fee waiver constituted a constructive denial of the request, Feinman was appealing that denial; and (4) that the CIA had misconstrued the nature of the second component of Feinman's new request and that the two year time frame precluding re-review is only applicable to requests for Mandatory Declassification Review and has no applicability to a request under the FOIA. Feinman also noted that she was requesting that any responsive records be produced in electronic format.

38.  As twenty working days have elapsed without a determination by the CIA concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

39.  Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the CIA of said right.

## COUNT TWO
### (CIA – KHALID SHEIKH MOHAMMED/DETAINEE CONFESSIONS)

40.  By letter dated September 17, 2008, Feinman submitted a FOIA request to the CIA for copies of all communications and documents, including but not limited to

reports, teletypes, e-mails, and memorandums and including all cross-references, pertaining to: "(1) Khalid Sheikh Mohammed's original confession to the murder of Daniel Pearl; and (2) any discussion or mention of Daniel Pearl's kidnapping and murder by other detainees in U.S. custody." Feinman specifically stated that the first component of the request should not be construed as requesting a copy of the transcript of KSM's confession before a military tribunal at Guantanamo Bay, Cuba. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

41.  As twenty working days have elapsed without a determination by the CIA concerning Feinman's request, she has therefore constructively exhausted all required administrative remedies.

42. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the CIA of said right.

## COUNT THREE
## (FBI HQ– DANIEL PEARL INVESTIGATIVE FILE)

43. By letter dated November 11, 2008, Feinman submitted a FOIA request to FBI HQ for "copies of any communications and documents, including but not limited to teletypes, e-mails, and memorandums and including all cross-references, pertaining to the U.S. investigation into the January 2002 kidnapping and murder of *Wall Street Journal* reporter Daniel Pearl." Feinman specifically noted that she was seeking records that were not a part of the FBI's open case file. She also clarified that the FBI could restrict the relevant time period to between January 23, 2002 and January 23, 2003. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing

Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl

Project was seeking the information exclusively for educational and scholarly purposes

and retained the ability to disseminate the information on a wide scale.

44. By letter dated November 12, 2008, FBI HQ acknowledged receipt of the request

and assigned it Request No. 1122243-000. The FBI stated that a search of its automated

indices did not find any responsive records.

45. By letter dated November 18, 2008, Feinman appealed the FBI's determination as

the product of an inadequate search.

46. As twenty working days have elapsed without a determination by the FBI

regarding Feinman's request, she has constructively exhausted all required administrative

remedies.

47. Feinman has a legal right under the FOIA to obtain the information she seeks, and

there is no legal basis for the denial by the FBI of said right.

### COUNT FOUR
### (FBI NY/NJ – DANIEL PEARL INVESTIGATIVE FILE)

48. By letters dated July 11, 2008, Feinman submitted FOIA requests to the FBI Field

Offices in New York, New York ("NYC Field Office") and Newark, New Jersey

("Newark Field Office") for "copies of any communications and documents, including

but not limited to teletypes, e-mails, and memorandums and including all cross-

references, pertaining to the U.S. investigation into the January 2002 kidnapping and

murder of *Wall Street Journal* reporter Daniel Pearl." Feinman specifically noted that she

was seeking records that were not a part of the FBI's open case file. She also clarified that

the FBI could restrict the relevant time period to between January 23, 2002 and

January 23, 2003. Feinman also indicated that she was seeking a waiver of fees, as she

was submitting the request both in her capacity as an Associate Dean at Georgetown

University's School of Continuing Studies and as co-professor of The Pearl Project.

Feinman explained that The Pearl Project was seeking the information exclusively for

educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

49. By letter dated August 15, 2008, the FBI Headquarters ("FBI HQ") acknowledged receipt of the requests on behalf of the NYC Field Office and the Newark Field Office and combined them into Request No. 1117890-001. FBI HQ stated that the materials are located in an investigative file that is exempt from disclosure by way of FOIA Exemption (b)(7)(A).

50. By letter dated September 29, 2008, Feinman appealed the FBI's determination that all responsive materials would be categorically exempt under FOIA Exemption (b)(7)(A). Feinman noted that she had specifically indicated that the scope of her request should include records that were not a part of the open case file.

51. As twenty working days have elapsed without a determination by the FBI regarding Feinman's appeal, she has constructively exhausted all required administrative remedies.

52. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the FBI of said right.

## COUNT FIVE
## (FBI – KHALID SHEIKH MOHAMMED/DETAINEE CONFESSIONS)

53. By letter dated November 11, 2008, Feinman submitted a FOIA request to the FBI for copies of all communications and documents, including but not limited to reports, teletypes, e-mails, and memorandums and including all cross-references, pertaining to "Khalid Sheikh Mohammed's original confession to the murder of Daniel Pearl." Feinman specifically stated that the request should not be construed as requesting a copy of the transcript of Khalid Sheikh Mohammed's ("KSM") confession before a military tribunal at Guantanamo Bay, Cuba. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl

Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

54.  By letter dated November 12, 2008, FBI HQ returned the FOIA request to Feinman. The letter stated that any responsive records, should they exist, were categorically exempt as unwarranted invasions of privacy by way of FOIA Exemption (b)(6) and (b)(7)(C). The letter noted FBI HQ would not process the request without a signed privacy waiver from KSM. The letter included a Privacy Waiver and Certification of Identify form.

55.  By letter dated November 18, 2008, Feinman appealed the FBI's assertion that a signed privacy waiver form was required prior to the processing of the search. Feinman explained that KSM's privacy interests were clearly outweighed by the public interest in disclosing the records, thereby negating the need for a privacy waiver. Feinman also stated that, to the extent the request is being processed under the Privacy Act, KSM is not entitled to privacy protection, as the Privacy Act does not provide privacy protection to foreign nationals. Feinman noted that KSM is a Pakistani national.

56.  As twenty working days have elapsed without a determination by the FBI concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

57.  Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the FBI of said right.

## COUNT SIX
## (FBI – RICHARD REID RECORDS)

58. By letter dated April 10, 2008, Feinman submitted a FOIA request to the FBI Field Office in Boston, Massachusetts ("Boston Field Office") for copies of "any and all documents gathered in U.S. vs. Richard Reid that include mention or content of emails, memos, letters, and transmittals of information between either of the following two

known email addresses owned and operated by Reid prior to his capture in December 2001, as well as any other email addresses which he may have held but not mentioned here as hereasaj2001@hotmail.com and goto8@hotmail.com, both referenced in the attached two pages of federal documents regarding 265A-BS-89704." Feinman noted that the scope of the search should include any and all documents which reference correspondence which Richard Reid ("Mr. Reid") held via these email addresses, specifically to any and all "cybernet.pk" email addresses. Feinman stated that she would be willing to pay up to $200 in reasonable search fees but that the request should be placed in the educational fee category. She also requested a fee waiver.

59.  By letter dated April 13, 2008, Feinman amended the FOIA request by attaching a public version of an FD-302 document pertaining to Mr. Reid.

60.  By letter dated April 14, 2008, FBI HQ returned the FOIA request to Feinman. The letter stated that any responsive records, should they exist, were categorically exempt as unwarranted invasions of privacy by way of FOIA Exemption (b)(6) and (b)(7)(C). The letter noted FBI HQ would not process the request without a signed privacy waiver from Mr. Reid. The letter included a Privacy Waiver and Certification of Identify form.

61.  By letter dated April 25, 2008, Feinman appealed the FBI's assertion that a signed privacy waiver form was required prior to the processing of the search. Feinman explained that Mr. Reid's privacy interests were clearly outweighed by the public interest in disclosing the records, thereby negating the need for a privacy waiver. Feinman also stated that, to the extent the request is being processed under the Privacy Act, Mr. Reid is not entitled to privacy protection, as the Privacy Act does not provide privacy protection to foreign nationals. Feinman noted that Mr. Reid is a British national.

62.  By letter dated September 22, 2008, Feinman sought a status update regarding her appeal. In the letter, Feinman noted that multiple voicemails had been left with the FBI FOIA Office but that none of the calls had been returned.

63. By way of a telephone conversation on September 25, 2008, FBI FOIA representative Kathy Washington ("Ms. Washington") contacted Feinman regarding her September 22, 2008 letter. Ms. Washington did not have an answer regarding why Feinman had yet to receive any response by the FBI with respect to Feinman's appeal. Later that same day, Ms. Washington called Feinman back again but she still did not have an answer regarding why Feinman had not even received a letter from FBI acknowledging receipt of Feinman's appeal. During both phone conversations, Ms. Washington insisted that a privacy waiver from Mr. Reid was required to process the request.

64. By way of a telephone conversation on October 2, 2008, Bradley P. Moss, Esq., spoke with FBI FOIA representative Beverly Riddley ("Ms. Riddley") regarding Feinman's appeal. During the conversation, Ms. Riddley stated that she would ensure that the appeal letter was provided to Kirk Krommer in the DOJ Office of Information and Privacy ("DOJ OIP") for administrative adjudication. Ms. Riddley also reiterated the FBI's perspective that a privacy waiver was required to process the request.

65. As twenty working days have elapsed without a determination by the FBI concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

66. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the FBI of said right.

## COUNT SEVEN
### (FBI – AL RASHID TRUST/AL AKHTAR TRUST/AOU)

67. By letter dated September 17, 2008, Feinman submitted a FOIA request to the FBI HQ for "any communications and documents, including but not limited to reports, teletypes, e-mails, and memorandums and including all cross-references" pertaining to: (1) the Al Rashid Trust; (2) the Al Akhtar Trust; and (3) the Aid Organization of the Ulema ("AOU"). Feinman provided alternate names for the three organizations and specifically requested that the scope of the search include any cross-references to the

16

alternate names. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

68.  By letter dated September 26, 2008, FBI HQ stated that a search of the FBI's automated indices had not found any responsive records pertaining to the Al Rashid Trust. The request was assigned Request No. 1120104-000.

69.  By letter dated September 26, 2008, FBI HQ stated that a search of the FBI's automated indices had not found any responsive records pertaining to the Al Akhtar Trust. The request was assigned Request No. 1120107-000.

70.  By letter dated September 26, 2008, FBI HQ stated that a search of the FBI's automated indices had not found any responsive records pertaining to the AOU. The request was assigned Request No. 1120108-000.

71.  By letter dated November 11, 2008, Feinman appealed the FBI's determination with respect to all three requests as the product of an inadequate search. Feinman specifically identified all three request numbers.

72.  As twenty working days have elapsed without a determination by the FBI concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

73. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the FBI of said right.

## COUNT EIGHT
### (DoD – KHALID SHEIKH MOHAMMED/DETAINEE CONFESSIONS)

74. By letter dated July 11, 2008, Feinman submitted a FOIA request to the DoD for "copies of any communications and documents, including but not limited to reports,

teletypes, e-mails, and memorandums and including all cross-references, pertaining to:

[(1)] Khalid Sheikh Mohammed's confession to murdering Daniel Pearl, including the transcripts of the original disclosure; and [(2)] any discussion or mention of Daniel Pearl's kidnapping and murder by other detainees in U.S. custody, particularly those detained in Pakistan as of January 23, 2002 (the day of Pearl's kidnapping)." Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

75.  By letter dated August 6, 2008, the DoD acknowledged receipt of the request and assigned it Request No. 08-F-154. The DoD stated that it was interpreting the first component of Feinman's request to encompass a request for the transcript of the Combatant Status Review Tribunal ("CSRT") transcript that included the confession of Khalid Sheikh Mohammed ("KSM") and therefore was enclosing a copy of that transcript. The DoD noted that information was being redacted from the document pursuant to FOIA Exemptions (b)(1), (b)(3), and (b)(6). The DoD stated that it had determined that Feinman qualified for the educational fee category but the letter did not indicate that the DoD had made any determination with respect to Feinman's request for a fee waiver.

76.  By letter dated September 2, 2008, Feinman appealed the DoD's response as the product of an inadequate search. Feinman based her appeal on three primary grounds: (1) that she had referenced the already public availability of the CSRT transcript in her original request letter; (2) that the DoD's interpretation of the scope of the first component of the request was not reasonable, as she had specifically noted she wanted a copy of the original confession by KSM, not his ultimate confession before the CSRT; and (3) that since the DoD's letter did not address the second component of her search,

she was taking that action to constitute an affirmative indication that no responsive records were located for that component and appropriately appealing that determination as well. Lastly, Feinman was clear in stipulating that she was not appealing the redactions contained within the CSRT transcript.

77.  By letter dated September 23, 2008, the DoD acknowledged receipt of the appeal and assigned it Appeal No. 08-A-1541.

78.  As twenty working days have elapsed without a determination by the DoD concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

79.  Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the DoD of said right.

## COUNT NINE
## (DOS – OMAR SHEIKH EXTRADITION)

80.  By letter dated June 2, 2008, Feinman submitted a FOIA request to DOS for "copies of any State Department communications, including but not limited to teletypes or e-mails and including all cross-references, pertaining to discussions regarding the merits of extraditing or prosecuting Ahmad Omar Saeed Sheikh, A/K/A Omar Sheikh." Feinman noted that DOS could restrict the relevant time period to March 14, 2002 to October 31, 2003. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

81.  By e-mail dated September 2, 2008, DOS FOIA representative Stuart Schwartzstein acknowledged receipt of the request and assigned it Request No. 200803584.

82.  As twenty working days have elapsed without a determination by the DOS concerning Feinman's request, she has therefore constructively exhausted all required administrative remedies.

83. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the DOS of said right

## COUNT TEN
### (DOJ – KHALID SHEIKH MOHAMMED/DETAINEE CONFESSIONS)

84.  By letter dated September 17, 2008, Feinman submitted a FOIA request to the DOJ's Criminal Division for copies of all communications and documents, including but not limited to reports, teletypes, e-mails, and memorandums and including all cross-references, pertaining to" Khalid Sheikh Mohammed's original confession to the murder of Daniel Pearl." Feinman specifically stated that the request should not be construed as requesting a copy of the transcript of KSM's confession before a military tribunal at Guantanamo Bay, Cuba. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

85.  By letter dated October 20, 2008, the DOJ's Criminal Division acknowledged receipt of the request and assigned it Request No. 200800688F. The DOJ stated that it believed that responsive records would be maintained by the FBI.

86.  By letter dated November 11, 2008, Feinman appealed the DOJ's determination that responsive records would not be maintained by the Criminal Division.

87.  As twenty working days have elapsed without a determination by the DOJ concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

88. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the DOJ of said right.

## COUNT ELEVEN
### (DOJ – GONZALES CALL TO MARIANE PEARL)

89.  By letter dated July 11, 2008, Feinman submitted a FOIA request to the DOJ OIP for records of the Office of the Attorney General consisting of "copies of all documents and communications from the Office of Attorney General Alberto Gonzales, including but not limited to memorandums, teletypes or emails and including all cross-references, pertaining to a phone call to Mariane Pearl, widow of *Wall Street Journal* reporter Daniel Pearl, regarding Khalid Sheikh Mohammed's confession to the murder of her husband." Feinman noted that the DOJ OIP could restrict the relevant time period to February 1, 2007 to March 30, 2007. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

90.  By letter dated August 15, 2008, the DOJ OIP acknowledged receipt of the request and assigned it Request No. AG/08-R0762. The letter stated that a determination regarding a waiver of fees would be made after it had been determined if any fees would be incurred.

91.  By letter dated September 8, 2008, the DOJ OIP stated that records searches in the Office of the Attorney General and the Departmental Executive Secretariat had not found any responsive records.

92.  By letter dated October 14, 2008, Feinman appealed the DOJ OIP's determination as the product of an inadequate search. Feinman noted that it has been publicly acknowledged that a phone call was, in fact, made by the Office of Attorney General.

93.  By letter dated October 20, 2008, the DOJ OIP acknowledged receipt of Feinman's appeal and assigned it Appeal No. 09-0067.

94.  As twenty working days have elapsed without a determination by the DOJ concerning Feinman's appeal, she has therefore constructively exhausted all required administrative remedies.

95. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the DOJ of said right.

## COUNT TWELVE
### (TREASURY – AL RASHID TRUST/AL AKHTAR TRUST/AOU)

96.  By letter dated September 17, 2008, Feinman submitted a FOIA request to the Treasury for "any communications and documents, including but not limited to reports, teletypes, e-mails, and memorandums and including all cross-references" pertaining to: (1) the Al Rashid Trust; (2) the Al Akhtar Trust; and (3) the AOU. Feinman provided alternate names for the Al Rashid Trust and specifically requested that the scope of the search include any cross-references to the alternate names. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

97.  By letter dated September 26, 2008, Treasury acknowledged receipt of the request and assigned it Request No. 2008-09-059. The letter stated that in order to process the request and in the event that Feinman was denied a fee waiver, Treasury needed an agreement from Feinman to pay applicable fees.

98.  By letter dated October 2, 2008, Feinman informed Treasury that, in the event that a fee waiver was denied, she would be willing to pay up to $200 in fees.

99. By letter dated October 10, 2008, Treasury acknowledged receipt of Feinman's agreement.

100. As twenty working days have elapsed without a determination by the Treasury concerning Feinman's request, she has therefore constructively exhausted all required administrative remedies.

101. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the Treasury of said right.

## COUNT THIRTEEN
### (DIA – MEMON RECORDS)

102. By letter dated July 11, 2008, Feinman submitted a FOIA request to the DIA for "copies of any communications or documents, including but not limited to logs, reports, teletypes, e-mails, and memorandums and including all cross-references, about the custody or transport of deceased Pakistani national Saud Memon." Feinman noted that the DIA could restrict its search to records created from February 1, 2002 to the present day. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

103. By letter dated July 23, 2008, the DIA acknowledged receipt of the request and assigned it Request No. 0551-2008. No determination was indicated regarding Feinman's request for a fee waiver.

104. As twenty working days have elapsed without a determination by the DIA concerning Feinman's request, she has therefore constructively exhausted all required administrative remedies.

105. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the DIA of said right.

## COUNT FOURTEN
### (CENTCOM – MEMON RECORDS)

106. By letter dated July 11, 2008, Feinman submitted a FOIA request to the DoD for "copies of any communications or documents, including but not limited to logs, reports, teletypes, e-mails, and memorandums and including all cross-references, about the custody or transport of deceased Pakistani national Saud Memon." Feinman noted that the DoD could restrict its search to records created from February 1, 2002 to the present day. Feinman also indicated that she was seeking a waiver of fees, as she was submitting the request both in her capacity as an Associate Dean at Georgetown University's School of Continuing Studies and as co-professor of The Pearl Project. Feinman explained that The Pearl Project was seeking the information exclusively for educational and scholarly purposes and retained the ability to disseminate the information on a wide scale.

107. By letter dated August 6, 2008, the DoD acknowledged receipt of the request and assigned it Request No. 08-F-1535. The DoD noted that it was referring the request to the CENTCOM for processing.

108. By letter dated August 13, 2008, the CENTCOM acknowledged receipt of the request and assigned it Request No. 08-0211. The letter stated that CENTCOM had determined that Feinman's request fell into the "other" category for fee purposes. No determination was indicated regarding Feinman's request for a fee waiver.

109. As twenty working days have elapsed without a determination by the CENTCOM concerning Feinman's request, she has therefore constructively exhausted all required administrative remedies.

110. Feinman has a legal right under the FOIA to obtain the information she seeks, and there is no legal basis for the denial by the CENTCOM of said right.

WHEREFORE, plaintiff Barbara Feinman prays that this Court:

(1) Orders the defendants to disclose the requested records in their entireties and make copies promptly available to her including in, where requested, electronic format;

(2)  Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552

(a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3)  expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4)  grant such other relief as the Court may deem just and proper.

Date:   December 17, 2008

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
brad@markzaid.com
mark@markzaid.com

Attorneys for Plaintiff