UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA FEINMAN | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No. 08-2188 (EGS) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY et al., | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

NOW COMES the plaintiff Barbara Feinman, by and through undersigned counsel, to respectfully move the Court for leave to file an amended complaint. A Memorandum of Points and Authorities and Proposed Order accompanies this Motion.

Plaintiff's counsel has discussed this request with counsel for the defendant and he has indicated that the defendant objects to the granting of this Motion.

The granting of this motion shall not result in the continuance of any hearing, conference or trial.

Date: March 26, 2009                                Respectfully submitted,


                                                    /s/
                                                    _____
                                                    Bradley P. Moss, Esq.
                                                    D.C. Bar #975905
                                                    Mark S. Zaid, Esq.
                                                    D.C. Bar #440532
                                                    Mark S. Zaid, P.C.
                                                    1250 Connecticut Avenue, N.W.
                                                    Suite 200
                                                    Washington, D.C. 20036

                                                    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA FEINMAN | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 08-2188 (EGS) |
| CENTRAL INTELLIGENCE AGENCY et al., | * | |
| Defendants. | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT**

NOW COMES the plaintiff Barbara Feinman ("Feinman") to respectfully move the Court for leave to file an Amended Complaint. Feinman brought this action under the Freedom of Information Act ("FOIA"), in her capacity as Co-Director of The Pearl Project, against eight federal agencies (or components of federal agencies) with respect to fourteen separate counts. Ms. Feinman is seeking through her FOIA requests to gather information pertaining to the kidnapping and murder of Wall Street Journal reporter Danny Pearl in Karachi, Pakistan in February 2002.

The desired information will ultimately be compiled and analyzed in an effort to bring greater clarity to the complex and confusing question of who exactly was involved in Pearl's murder. Feinman continues to submit new, separate FOIA requests to federal agencies for records pertaining to the murder.

In the Joint Status Report filed on February 27, 2009, Feinman stated that she would be seeking leave of the Court to file an Amended Complaint that would incorporate a

new claim. This new claim, raised pursuant to the Administrative Procedures Act ("APA"), challenges the defendant Federal Bureau of Information's ("FBI") policy that requires Feinman, or anyone else for that matter, to provide signed privacy waivers from foreign nationals regarding whom she was seeking responsive records prior to agreeing to even begin processing. This requirement does not conform with, and indeed constitutes an explicit violation of, both FOIA and the FBI's own internal regulations.[1] Feinman's First Amended Complaint, attached as Exhibit "A", incorporates this claim as Count Fifteen and adds two additional prayers for relief seeking an immediate cessation of the policy by FBI and a declaration that the policy itself is unlawful.

The FBI opposes Feinman's attempt to amend her complaint based on the grounds of futility. Specifically, the FBI claims that the issue had been resolved and therefore there is no present case or controversy. In effect, the FBI is arguing that Feinman's new claim is moot as a result of the FBI's agreement to process Count Five and Count Six without a signed privacy waiver from the two foreign nationals in question, designated Al-Qaeda terrorists Richard Reid and Khalid Sheikh Mohammed.

The FBI's argument is without merit, particularly because the FBI continues to exercise this policy, and Feinman's motion for leave should be granted and the First Amended Complaint should be accepted.

---

[1] It also contravenes the authoritative guidance provided in public with respect to the matter by Melanie Pustay, Director of the Department of Justice's Office of Information Privacy

**ARGUMENT**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Feinman is timely seeking leave of this Court to file an amended complaint. The grant or denial of leave lies in the sound discretion of the District Court. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)(per curiam). The Court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." Id.; Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C., 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 182 (1962). Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice or repeated failure to cure deficiencies by previous amendments. Id.; Caribbean Broad. Sys., 148 F.3d at 1083..

There is no dispute that the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)(quotations in original), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To demonstrate standing a party must show an injury-in-fact caused by the conduct of the defendants that can be redressed by judicial relief. Lujan, 504 U.S. at 560-61.

As will be demonstrated below, Feinman's motion for leave to incorporate this new APA claim should not be denied based upon futility, as the claim satisfies the case-or-

controversy requirement and therefore Feinman has standing to bring the claim before this Court.

## I. FEINMAN'S APA CLAIM IS NOT RENDERED MOOT BY WAY OF THE FBI'S DECISION FOLLOWING THE FILING OF THIS LAWSUIT TO PROCESS HER FOIA REQUESTS WITHOUT A SIGNED WAIVER

A matter is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Munsell v. Dep't of Agric., 509 F.3d 572, 583 (D.C. Cir. 2007), quoting 21st Century Telesis Joint Venture v. FCC, 318 F.3d 192, 198 (D.C. Cir. 2003). Where intervening events preclude the Court from granting plaintiffs any effective relief, even if they were to prevail on their underlying claim, the Court must dismiss a suit as moot for want of subject matter jurisdiction." Citizens Alert v. Leavitt, 355 F. Supp. 2d 366, 369 (D.D.C. 2005), citing Church of Scientology v. United States, 506 U.S. 9, 11 (1992).

For reasons described below, the FBI's decision to permit the processing of Count Five and Count Six subsequent to Feinman's decision to initiate litigation before this Court does not render moot Feinman's APA claim against the FBI's policy itself.

### A. The FBI Can Not Meet Its Heavy Burden Of Demonstrating That Feinman Or Others Will Not Be Subjected To This Privacy Waiver Requirement Again

Although past exposure to illegal conduct, by itself, does not ordinarily demonstrate the existence of a present case or controversy, it can suffice if the plaintiff can demonstrate the existence of continuing, present adverse effects. See Southwestern Bell Tel. Co. v. FCC, 168 F.3d 1344, 1350 (D.C. Cir. 1999), citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974). Indeed, it is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to

determine the legality of the practice. Nat'l Sec. Archive v. CIA, 564 F. Supp. 2d 29, 35 (D.D.C. 2008)(quotations omitted), quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). See also Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc., 528 U.S. 167, 189 (2000)("If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'"). If a defendant claims its voluntary conduct has mooted the controversy, it must show that "there is no reasonable expectation that the conduct will recur and . . . 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" See Arizona Pub. Serv. Co. v. EPA, 211 F.3d 1280, 1296 (D.C. Cir. 2000), quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). See also Friends of the Earth, 528 U.S. at 190 (clarifying burden as demonstrating it is absolutely clear that conduct is not reasonably expected to recur)(emphasis added); Community Hous. Trust v. Dep't of Consumer & Regulatory Affairs, 257 F. Supp. 2d 208, 218 (D.D.C. 2003)(identifying defendant's burden as "heavy").

There is no reason to believe that the FBI will be able to meet this rather heavy burden as Feinman can rather easily demonstrate the existence of continuing, present adverse effects that are reasonably likely to recur. Throughout the administrative process, the FBI's own FOIA personnel clearly and unambiguously informed both Feinman and undersigned counsel that it was FBI policy to categorically require a privacy waiver prior to searching for records pertaining to foreign nationals. See First Amended Complaint at ¶¶63-64. After Feinman was forced to resort to litigation and the FBI was publicly ridiculed in the media, the FBI agreed to process Count Five and Count Six without signed privacy waivers. Declaration of Bradley P. Moss, Esq. at ¶6 (dated March 26,

5

2009), attached as Exhibit "B". However, the FBI refused to provide a sworn affidavit verifying both that it was not FBI FOIA policy to require categorical privacy waivers for requests pertaining to foreign nationals and that FBI FOIA personnel would not impose unlawful privacy waiver requirements in the future. Id. at ¶9.

Feinman has every intention of submitting in the future, and indeed presently continues to submit, FOIA requests for records relating to foreign nationals. Declaration of Barbara Feinman at ¶¶3-4 (dated March 25, 2009)("Feinman Decl."), attached as Exhibit "C." She can reasonably expect to be subjected to the same conduct by the FBI with respect to these other FOIA requests. Nor, contrary to any assertion that the FBI can offer, is this a speculative argument. It has already happened.

In an almost comical twist of irony, on March 16, 2009, a mere four weeks after the FBI agreed to process Count Five and Count Six without signed privacy waivers, the FBI FOIA office again unlawfully demanded that Feinman provide a signed privacy waiver for an unrelated FOIA request, i.e., not subject to this litigation, for records pertaining to three foreign nationals. Id. at ¶6. It was only after e-mailing the FOIA office and reminding them of the recent spat of negative publicity attributed to the FBI by way of the present litigation that the FBI "suddenly" changed its mind once more and administratively reversed itself prior to litigation being commenced. Id. at ¶¶7-8.[2] Clearly the implementation of this inappropriate policy has continued unabated. One can only

---

[2] The FBI, for its actions in this very case to require a privacy waiver from a known foreign terrorist, was recently "honored" as the winner of the non-profit organization National Security Archive's fifth annual Rosemary Award, named for President Richard M. Nixon's former secretary, Rose Mary Woods, and her improbable stretch, which allegedly caused that "accidental" erasure of 18 1/2 minutes of a key Watergate tape. See *http://www.washingtonpost.com/wp-dyn/content/article/2009/03/12/ AR2009031203352.html*.

guess at how many requestors have been adversely impacted by this policy because they were not aware, as Feinman is, of the events that transpired in this litigation. Thus, the FBI lacks any argument that interim events in the present litigation have "irrevocably eradicated the effects of the alleged violation."

### B. Alternatively, The FBI's Policy Falls Within The "Capable Of Repetition" Exception To The Mootness Doctrine

The "capable of repetition yet evading review" exception to the mootness doctrine can only be applied if the plaintiff can demonstrate that: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. See e.g., Pharmachemie B.V. v. Barr Labs, Inc., 276 F.3d 627, 631-33 (D.C. Cir. 2002); National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 350 (D.C. Cir. 1997).

This case is more than appropriate to invoke the "capable of repetition yet evading review" exception. See Burlington Northern Railroad Co. v. Surface Transportation Bd., 75 F.3d 685, 690 (D.C. Cir. 1996)(noting that agency conduct of less than two years duration ordinarily evades review). See also Matthews v. District of Columbia, 521 F. Supp. 2d 79, 82 (D.D.C. 2007)(premature to conclude plaintiffs lacked standing to seek declaratory relief when no evidence in record indicating plaintiffs unable to show likely to suffer same injury again); but see Fraternal Order of Police, D.C. v. Rubin, 134 F. Supp. 2d 39 (D.D.C. 2001)(concluding three year internal investigation into allegedly unlawful conduct and issuance new agency policy prohibiting conduct sufficiently established that challenged conduct not likely to recur again).

7

It would seem reasonable to presume that the timeframe for FOIA administrative proceedings – statutorily set at 20 days – constitutes too short a period to gain meaningful review. And as stated, Feinman has continued to submit FOIA requests to the FBI for records related to foreign nationals and not only reasonably anticipates encountering the same illegal conduct by FBI FOIA personnel, but has provided evidence of FBI personnel engaging in that very same illegal conduct mere days ago. Feinman Decl. at ¶¶8-9.

Both factually and legally, Feinman has demonstrated rather clearly that her standing to raise this new APA claim is not mooted by the FBI's conduct that occurred subsequent to the initiation of this litigation.

**C. Feinman's APA Claim Is Ripe For Adjudication**

If a plaintiff challenges both a specific Government action and the policy that underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular Government action is moot. City of Houston v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1428 (D.C. Cir. 1994). If the plaintiff has standing to challenge the future implementation of the policy, the critical question becomes whether the policy is sufficiently ripe to permit judicial review. See Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 92 (D.C. Cir. 1986).

The Supreme Court long ago concluded that assessments of ripeness consider both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. See Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967). Indeed, the primary focus of the ripeness doctrine has been a prudential attempt to time review in a way that balances the petitioner's interest in prompt consideration of allegedly unlawful Government action against the Government's interest in crystallizing

its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting. See Mississippi Valley Gas Co. v. FERC, 68 F.3d 503, 508 (D.C. Cir. 1995)(citations omitted). In conducting its assessment, the court must consider: (1) whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review; (2) whether the court or the Government would benefit from the postponement of review until the Government action or policy in question has assumed either a final or more concrete form; and (3) the appellants' interest in immediate review, or whether the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs. See Nat'l Sec. Archive, 564 F. Supp. 2d at 36 (citations omitted), citing Better Gov't Ass'n, 780 F.2d at 92.

Claims that raise purely legal questions do not require any additional factual development. See Better Gov't Ass'n, 780 F.2d at 92. This Court's assessment of the legitimacy of the FBI's policy would not be "enhanced" by the existence of a different set of particular FOIA requests. Indeed, it is Feinman's position that even faithful application of the FBI's current policy will result in the unlawful imposition of a categorical requirement that Feinman provide a privacy waiver for a FOIA request pertaining to a foreign national. Cf. Shays v. FEC, 424 F. Supp. 2d 100, 112 (D.D.C. 2006)("As such, the ripeness doctrine is inapplicable; plaintiffs' claim rests not on the assumption that the Government will exercise its discretion unlawfully in applying the regulation but on whether its faithful application would carry the Government beyond its statutory mandate.")(internal quotations omitted). Therefore, the first prong has been satisfied.

Assessments by the courts of the finality of the Government policy with respect to the second prong tend to be flexible and pragmatic. See Better Gov't Ass'n, 780 F.2d at 93 ("Where, as here, the Government has stated that the action in question governs and will continue to govern its decisions, such action must be viewed as final in our analysis of ripeness."). This is not a situation in which the policy could be construed as still in development or simply not yet concrete. See e.g., Arkansas Power & Light Co. v. Interstate Commerce Com., 725 F.2d 716, 725 (D.C. Cir. 1984)(finding broadly stated, tentative rule issued without notice or comment whose aim was to give advance notice of general guidelines had not yet reached formal and concrete form); Am. Historical Ass'n v. Nat'l Archives & Records Admin., 516 F. Supp. 2d 90, 104 (D.D.C. 2007)(concluding no evidence it was certain or even likely that soon-to-be former president would ultimately assert executive privilege with respect to plaintiff's document requests and therefore challenges to privilege provisions speculative and not yet ripe).

To the contrary, the present circumstances are more analogous to a situation in which the policy has reached its final and concrete form and will arguably govern over future decisions.[3] See, e.g., Better Gov't Ass'n, 780 F.2d at 93 (DOJ guidelines in effect for over two years were final, not informal); Shays v. FEC, 337 F. Supp. 2d 28, 49 (D.D.C. 2004)(challenges were limited to claiming FEC had not followed Congressional intent implementing BCRA and ripe for review). There is no reason to believe that the FBI's FOIA policy, which was unambiguously recently reiterated by its FOIA personnel, is

---

[3] In light of the fact that the FBI can not satisfy the second prong, Feinman is not required to satisfy the third prong. See AT&T Corp. v. FCC, 349 F.3d 692, 700 (D.C. Cir. 2003) ("Thus, where there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong.").

anything but concrete and finalized. If there is evidence to the contrary, the burden rests upon the FBI to submit documentation demonstrating that fact.

Accordingly, the FBI's policy is sufficiently ripe for review.

## **CONCLUSION**

For the foregoing reasons, Feinman's Motion for Leave to File First Amended Complaint should be granted.

Date: March 26, 2009

Respectfully submitted,

/s/
_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com