# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                              |   |                              |
|------------------------------|---|------------------------------|
| BARBARA FEINMAN              | * |                              |
|                              | * |                              |
| Plaintiff,                   | * |                              |
|                              | * |                              |
| v.                           | * | Civil Action No. 08-2188 (EGS) |
|                              | * |                              |
| CENTRAL INTELLIGENCE AGENCY  | * |                              |
| et al.                       | * |                              |
|                              | * |                              |
| Defendants.                  | * |                              |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN REPLY TO DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

For more than six months, the Freedom of Information Act ("FOIA") Office of the defendant Federal Bureau of Investigation ("FBI") steadfastly refused to even consider the notion that it was required to begin processing two separate FOIA requests for records pertaining to two foreign nationals (who also happen to be high-profile Al Qaeda terrorists) absent signed privacy waivers from those two individuals. No amount of common sense or legalistic arguing by plaintiff Barbara Feinman ("Feinman") or counsel was sufficient to dissuade the FBI's staff of the error of its ways. It was only after Feinman was forced to resort to litigation, the FBI was publicly ridiculed, and the FBI FOIA office's own senior management publicly stated that its personnel are to apply "common sense" that the FBI apparently relented and permitted the processing of Count Five and Count Six without signed privacy waivers.

Now the FBI has chosen once again to assert a disturbingly broad and highly-questionable legal theory in response to Feinman's Motion for Leave to File First Amended Complaint ("Feinman's Motion")(filed March 26, 2009). Addressing Feinman's attempt to add a new claim and seek relief from this Court by way of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702 et seq., in the form of a declaratory judgment that the FBI's policy contravenes the legal standards set forth in FOIA, the FBI argues that the fact that it has now agreed to process the FOIA requests deprives Feinman of any standing to challenge the FBI's overarching – and continuing – policy through the APA.

The FBI's arguments fundamentally misconstrue established case law with respect to the requirements for an "injury-in-fact" and apparently fail to properly recognize the separate threshold requirements for demonstrating standing. Indeed, adhering to the FBI's understanding of the requirements for standing would arguably nullify the ability of any FOIA requester, let alone Feinman, to challenge agency policy that caused impermissible conduct so long as the agency ceased the conduct subsequent to the filing of litigation. Permitting such an occurrence would fly in the face of decades of established case law on standing and related mootness and ripeness principles.

Accordingly, this Court should grant Feinman's Motion and allow the filing of her First Amended Complaint.

# ARGUMENT

## I. FEINMAN MAINTAINS STANDING TO RAISE HER NEW CLAIM

The parties appear to agree that the decision by this Court of whether to grant or deny Feinman's Motion revolves around the question of whether her amendment would be futile. Specifically, the issue at hand is whether Feinman has standing to raise her new APA claim and, consequently, if this Court has jurisdiction to hear the claim.

As described below, the FBI's arguments that Feinman lacks standing are without merit.

### A. Feinman Can Demonstrate The Existence Of An "Injury-In-Fact"

To satisfy the injury-in-fact requirement of standing a plaintiff must suffer a concrete and particularized injury that is actual or imminent, and not conjectural or hypothetical. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)(plaintiff must show he has sustained some direct injury and injury is "real and immediate"). Although past exposure to illegal conduct, by itself, does not ordinarily demonstrate the existence of a present case or controversy, it can suffice if the plaintiff can demonstrate the existence of continuing, present adverse effects. See Southwestern Bell Tel. Co. v. FCC, 168 F.3d 1344, 1350 (D.C. Cir. 1999); see also Fair Employment Council v. BMC Mktg. Corp., 28 F.3d 1268, 1273 (D.C. Cir. 1993)(plaintiff must allege likelihood of future violations of rights, not simply future effects from past violations); Bolger v. District of Columbia, 510 F. Supp. 2d 86, 92 (D.D.C. 2007)(declaratory relief for past wrongs requires demonstration of continuing harm or real threat of repeated injury in future).

The FBI's response focuses on the fact that, at present, Feinman no longer has any pending FOIA requests which the FBI is refusing to process absent a signed privacy waiver from a foreign national. See Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint at 5-6 ("FBI's Memo")(dated April 9, 2009). It is the FBI's apparent position that without evidence that the FBI was still refusing to process one of Feinman's FOIA requests absent a signed privacy waiver at the time of Feinman's filing of her Motion[1] she can not demonstrate the existence of an injury-in-fact. Id. Moreover, the FBI asserts that Feinman has not provided anything beyond conjecture and speculation that the FBI would in the future again require signed privacy waivers for requests pertaining to foreign nationals. Id.

The FBI's argument quite simply misses the point. In order to establish an injury-in-fact, Feinman is not required to be able to point to a continuing refusal by the FBI to process a particular FOIA request absent a signed privacy waiver from the particular foreign national. All that is required at this point in the litigation for Feinman to raise an APA claim is her ability to demonstrate that she suffered a concrete injury as a result of the FBI's conduct and that the harm is continuing and adverse in that even a good faith application of the FBI's policy in the future will still result in the same illegal conduct occurring yet again.

Feinman has already demonstrated that and more. As a direct result of the FBI's refusal to even begin processing Count Five or Count Six absent signed privacy waivers from Richard Reid and Khalid Sheikh Mohammed, Feinman was deprived of her

---

[1] Feinman does not dispute the FBI's argument that an evaluation of this Court's jurisdiction to consider the new claim should be considered in light of the facts at the time of the filing of her Motion. See FBI's Memo at 4-5, citing Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74 (2007).

statutory right to a search for the responsive records, not to mention her right to copies of responsive records that are not exempt from disclosure. The FBI's refusal was a direct by-product of its policy, standing in contravention of the standards set forth in FOIA, to require signed privacy waivers for foreign nationals prior to beginning the processing of a request for records pertaining to those foreign nationals. See First Amended Complaint at ¶¶54, 60 ("FAC")(dated March 26, 2009), attached as Exhibit "A" to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to File First Amended Complaint ("Feinman's Memo")(filed March 26, 2009).

Feinman has also sufficiently demonstrated, at least for purposes of this stage in the litigation, that there is a likelihood that she will be subjected to similar illegal conduct by the FBI with respect to future FOIA requests. Not only did two separate FBI FOIA personnel state that it was an existing FBI policy to require signed privacy waivers but Feinman has highlighted that even after the initiation of this litigation the FBI FOIA office has continued to require signed privacy waivers prior to processing other unrelated FOIA requests for records pertaining to foreign nationals. See FAC at ¶¶63-64; Declaration of Bradley P. Moss, Esq. at ¶¶3-4 ("Moss Declaration"), attached as Exhibit "B" to Feinman's Memo[2]; Declaration of Barbara Feinman at ¶¶5-9 ("Feinman Declaration"), attached as Exhibit "C" to Feinman's Memo. That this policy has been permitted to go forward is arguably due to a lack of proper training and oversized

---

[2] During a telephone conversation on October 2, 2008, with Beverly Riddley ("Ms. Riddley") of the FBI FOIA office, Ms. Riddley, albeit politely, explicitly asserted that it was the FBI's policy to require privacy waivers before processing and that there was no way around that. Should the FBI wish to challenge this factual assertion, Feinman consents to the filing of any sur-reply the FBI may wish to submit that includes a declaration from Ms. Riddley or another member of the FBI's FOIA staff to address the existence or non-existence of the challenged policy.

workloads for lower level FOIA personnel and has likely tied up senior FOIA personnel with countless administrative appeals that should never have been necessary in the first place. See Declaration of Scott Hodes at ¶¶4-6 (dated April 17, 2009), attached as Exhibit "A".

Furthermore, in response to media inquiries about this very litigation, David M. Hardy ("Mr. Hardy"), Chief of the FBI FOIA office, stated only that the FBI is supposed to apply common sense and "… waive that rule."[3] See Exhibit "1" to Feinman Declaration. The obvious logical conclusion that can be drawn from Mr. Hardy's statement is that it is the FBI's policy (or rule) to categorically require signed privacy waivers from foreign nationals prior to beginning the processing of the FOIA request.[4] It

---

[3] To be clear, neither FOIA Exemption (b)(6) or (b)(7)(C) distinguishes between Khalid Sheikh Mohammed, a vile individual who committed horrific acts of terror against the United States (and possibly Danny Pearl in particular), or a simple German shopkeeper living in Berlin who has never had so much as a parking ticket. Both individuals are foreign nationals and there is nothing within FOIA that mandates application of the FBI's policy. Accordingly, application of either privacy exemption is permitted only after the particular agency has processed the search for responsive records and weighed the privacy interests of the individual versus the public's interest in the information. Additionally, any claim that the FBI can not release information about an individual absent a privacy waiver for fear of incurring liability under the Privacy Act is erroneous. The Privacy Act does not apply to non-U.S. nationals. See 5 U.S.C. §552a(a)(2)(defining "individual" as a citizen of the United States or an alien lawfully admitted for permanent residence); see also Raven v. Panama Canal Co., 583 F.2d 169, 171 (5th Cir. 1978) (explaining that by narrowly defining "individual" Congress intended to exclude foreign nationals from protection of Privacy Act).

[4] The FBI's own arguments would appear to confirm that it does continue to maintain the violative policy. In support of its' argument that Feinman's belief that she will be harmed again in the future is speculative, the FBI argued that future decisions by the FBI to require a signed privacy waiver would be fact-determinative. See FBI's Memo at 6 n.1. To be clear, there are no set of facts that would permit requiring a signed privacy waiver from a foreign national prior to the processing of a FOIA request. The policy as a whole, regardless of the factual circumstances, stands in contravention of FOIA and that is exactly what Feinman is seeking to challenge. The FBI's own argument undercuts the merits of its' Opposition as it confirms Feinman's position.

6

is the legality of that policy itself, not its specific application to a particular FOIA request, which Feinman is attempting to challenge by adding the new APA claim.[5]

This is not unadorned speculation that in the future the FBI will require signed privacy waivers for requests pertaining to foreign nationals. Instead, this is a reasonable belief, based upon statements from FBI FOIA personnel and the FBI's conduct with respect to FOIA requests processed both before and after the initiation of this litigation, that there is a strong likelihood, if not foregone conclusion, that the FBI will engage in this conduct again.

Accordingly, the FBI's arguments are without merit and Feinman has sufficiently demonstrated that she has standing to raise her new APA claim.

### B. The FBI's Arguments With Respect To The "Voluntary Cessation" And "Capable Of Repetition Yet Evading Review" Exceptions Lack Both Substance And Any Merit

The parties agree that the constitutional requirement for demonstrating standing must be satisfied prior to considering mootness or ripeness principles. See FBI's Memo at 7, quoting Spirit of the Sage Council v. Norton, 411 F.3d 225, 230 (D.C. Cir. 2005)("The doctrines of standing, ripeness, and mootness . . . all derive from the 'case or controversy' requirement of Article III. If any one of them is not satisfied, then the court is without

---

[5] The FBI's commentary about the lack of justice that would be found in granting Feinman's Motion after the FBI had agreed to waive its privacy waiver requirement for Count Five and Count Six, see FBI's Memo at 6 n.2, is laughable at best and outright insulting at worst. That Feinman was forced to resort to litigation in the first place was an injustice in and of itself, as there is no legal justification for the FBI's requirement of the signed privacy waivers for foreign nationals in the first place. The fact that the FBI ultimately relented, in the midst of public ridicule, does not change the fact that the policy itself remains in place and, absent a legal challenge, will continue to result in additional injustices in the future. There is no justice to be found in FOIA requestors being left with no other choice but to resort to litigation and media exposure to force federal agencies to comply with the legal standards set forth in FOIA.

7

jurisdiction over the suit and has no occasion – indeed may have no authority – to consider the others.")(internal quotations in original); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997)("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."). The Supreme Court has cautioned though that describing mootness as "standing set in a time frame" is not comprehensive, for if it were the "voluntary cessation" and "capable of repetition yet evading review" exceptions could not exist. See Friends of the Earth, 528 U.S. at 190.

The FBI devotes the majority of its analysis of mootness and ripeness principles to simply stating that this Court does not need to even consider them due to Feinman's alleged failure to satisfy the constitutional requirements for standing. See FBI's Memo at 7-8. To the extent that it even addresses the merits of mootness,[6] it has confined that analysis to a mere three sentence footnote stating that neither the voluntary cessation or capable of repetition yet evading review exceptions apply here. See Id. at 7 n.3.

Yet again, the FBI has missed the point. Feinman is not arguing that doctrines of mootness and ripeness can somehow overcome a failure to demonstrate the existence of standing in the form of a concrete injury-in-fact. As demonstrated infra, Feinman can establish and has established that she suffered an injury-in-fact that suffices for purposes

---

[6] The FBI chose not to dispute the substantive merits of Feinman's arguments with respect to the ripeness of the new APA claim for adjudication. Instead, it focused on the fact that Feinman's analysis was focused on the prudential concerns underlying ripeness issues and did not address the constitutional requirement that Feinman demonstrate the existence of an injury-in-fact. See FBI's Memo at 8 n.4. As Feinman has already demonstrated the existence of an injury-in-fact, the prudential concerns of the ripeness doctrine are appropriately before this Court for consideration and adjudication on the merits. Feinman finds no need to rehash her arguments and waste the Court's time with multiple pages of analysis that has already been sufficiently detailed elsewhere in this litigation. See Feinman's Memo at 8-11.

8

of the constitutional requirements of standing. Therefore, the FBI's arguments are effectively pointless as they address an irrelevant issue.

Nor do the FBI's arguments with respect to the mootness exceptions hold any substantive weight. Feinman laid out in considerable detail in her Motion the applicable case law and facts that applied to both exceptions. See Feinman's Memo at 4-8. The FBI, for its part, rejects the notion that Feinman's APA claim falls within the "voluntary cessation" exception on the grounds that Feinman has failed to provide anything other than speculation that the FBI will refuse to process FOIA requests in the future absent signed privacy waivers. FBI's Memo at 7 n.3. In terms of the "capable of repetition yet evading review" exception, the FBI argues that there is sufficient time for Feinman (or any other FOIA requestor) to challenge the FBI's determination within the procedure set forth by FOIA. Id.

Neither argument contains any merit. With respect to the "voluntary cessation" exception, Feinman has identified more than sufficient evidence demonstrating that it is reasonably likely – even nearly guaranteed – that the FBI will refuse to process FOIA requests for records pertaining to foreign nationals absent a signed privacy waiver. Feinman has explained that the FBI FOIA office's personnel stated that it was their policy to require the privacy waivers and the FBI has continued to enforce this policy on other unrelated FOIA requests subsequent to the initiation of this litigation. Moss Declaration at ¶¶3-4; Feinman Declaration at ¶¶5-9. Indeed, the FBI itself has admitted in legal pleadings that this policy remains in effect. See FBI's Memo at 6 n.1. Nor, for that matter, has the FBI provided even a scintilla of evidence to meet its own formidable burden of showing that it is absolutely clear that the behavior could not reasonably be

expected to recur. Similarly, with respect to "capable of repetition yet evading review," it has been accepted that agency conduct of less than two years will ordinarily evade review. See Burlington Northern Railroad Co. v. Surface Transportation Bd., 75 F.3d 685, 690 (D.C. Cir. 1996).

Accordingly, Feinman's new claim does not suffer from mootness or ripeness concerns and can be appropriately brought before this Court.

## **CONCLUSION**

For the foregoing reasons, Feinman's Motion for Leave should be accepted and her First Amended Complaint should be incorporated.

Date: April 17, 2009

                                                        Respectfully submitted,

                                                        /s/
                                                    _____
                                                    Bradley P. Moss, Esq.
                                                    D.C. Bar #975905
                                                    Mark S. Zaid, Esq.
                                                    D.C. Bar #440532
                                                    Mark S. Zaid, P.C.
                                                    1250 Connecticut Avenue, N.W.
                                                    Suite 200
                                                    Washington, D.C. 20036
                                                    (202) 454-2809
                                                    (202) 330-5610 fax
                                                    Brad@MarkZaid.com
                                                    Mark@MarkZaid.com